STATE OF CONNECTICUT        :    **FILED UNDER SEAL**
                             :

ss: New Haven, Connecticut

COUNTY OF NEW HAVEN      November 13, 2017

#### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Michael Morrison, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1.      I have been employed as a Special Agent for the Federal Bureau of Investigation ("FBI") since 2012. I am currently assigned to the cybercrime squad of the New Haven Division. I have received training and gained experience in, among other things, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, and computer evidence identification, seizure and processing. I have personally participated in investigations related to financial fraud, cybercrimes, and cyber intrusions. In addition to my work experience, I have received specialized training in the field of computer crime investigation from the FBI and others. I am an "investigative or law enforcement officer of the United States," within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.      I make this affidavit in support of applications for search warrants for information associated with the following accounts (the "SUBJECT ACCOUNTS"):

     a.      The accounts and information associated with Google account ██████@gmail.com, as well as any Google accounts linked to that account by cookies, recovery email address, or telephone number, that are stored at premises controlled by Google Inc. ("Google"), an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View,

California 94043, as more fully described in Attachment A-1, which is incorporated herein by reference; and

b. The accounts associated with Apple Person ID ▮▮▮▮▮▮ and ▮▮▮▮▮▮, or the email addresses ▮▮▮▮▮▮@gmail.com and ▮▮▮▮▮▮@list.ru, that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), a company headquartered at 1 Infinite Loop, Cupertino, CA 95014, as more fully described in Attachment A-2, which is incorporated herein by reference.

3. This affidavit is made in support of applications for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure to require Apple and Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachments B-1 and B-2. Upon receipt of the information described in Section I of Attachments B-1 and B-2, government-authorized persons will review that information to locate the items described in Section II of Attachments B-1 and B-2.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1030 (Fraud and related activity in connection with computers), specifically through ransomware attacks, have been committed by as yet unidentified person or persons. There is also probable cause to search the SUBJECT ACCOUNTS for evidence, instrumentalities, or fruits of these crimes further described in Attachments B-1 and B-2, which are incorporated herein by reference.

5. The statements contained in this affidavit are based in part on information provided by other members of local, state, federal, and foreign law enforcement, my own investigation to

include personal observations, documents and other investigative materials which I have reviewed, as well my training and experience as a Special Agent with the FBI.   Since this affidavit is being submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, instrumentalities, contraband and fruits of the above listed crimes are located within the SUBJECT ACCOUNTS, as more fully described in Attachments A-1 and A-2.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrants for the SUBJECT ACCOUNTS pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A) because this Court is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  Specifically, the Court is "a district court of the United States . . . that– has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## RELVANT STATUTES

7.     18 U.S.C. § 1030 prohibits a person from, among other things, accessing a computer without authorization, and thereby obtaining information from a protected computer. The statute also prohibits a person from knowingly and with intent to defraud, accessing a protected computer without authorization, and by means of such conduct furthering the intended fraud and obtaining anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.  The statute further prohibits a person from intentionally accessing a protected computer without authorization, and as a result of such conduct, causes damage and loss.  In addition, the

3

statute prohibits a person from conspiring to commit the foregoing offenses. The term "protected computer" includes, among other things, a computer used in or affecting interstate or foreign commerce or communication.

## BACKGROUND CONCERNING E-MAIL ACCOUNTS

8.     In my training and experience, I have learned that Google offers a variety of on-line services, including electronic mail ("e-mail" or "email") access, to the public.  Subscribers obtain an account by registering with Google.  During the registration process, Google requires subscribers to provide basic personal information.  Therefore, Google's computers are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for subscribers) and information concerning subscribers and their use of Google's services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

9.     In general, an e-mail that is sent to a subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail.  If the subscriber does not delete the message, the message can remain on Google's servers indefinitely.

10.     When the subscriber sends an e-mail, Google often saves a copy of the e-mail that is sent.  Unless the sender of the e-mail specifically deletes the e-mail from Google's server, the e-mail can remain on the system indefinitely.

11.     A sent or received e-mail typically includes the content of the messages, source and destination addresses, the date and time at which the email was sent or received, and the size and

4

length of the e-mail.  If an e-mail user writes a draft message but does not send it, that message may also be saved.

12.     In addition to e-mails, a subscriber can also store with Google files such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by Google. For example, a Google subscriber may engage in chat, audio, or video communications via Hangouts, store their web history, keep a calendar with Google Calendar, utilize the Android operating system on their mobile phone, sync bookmarks, browsing history, and passwords using Google Chrome Sync, store documents in Google's servers using Google Drive, keep track of their Location History or Web History, and use YouTube to upload and share web videos.  In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

13.     In my training and experience, Google provides mobile applications, "apps", which users can download to their mobile devices.  In my training and experience, providers such as Google frequently obtain location data.

14.     In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.   Based on my training and my experience, I know that even

5

if subscribers insert false information to conceal their identity, I know that this information often

provide clues to their identity, location or illicit activities.

15.     In my training and experience, e-mail providers typically retain certain

transactional information about the creation and use of each account on their systems.   This

information can include the date on which the account was created, the length of service, records

of log-in (i.e., session) times and durations, the types of service utilized, the status of the account

(including whether the account is inactive or closed), the methods used to connect to the account

(such as logging into the account via the provider's website), and other log files that reflect usage

of the account.   In addition, e-mail providers often have records of the IP address[1] used to register

the account and the IP addresses associated with particular logins to the account.   Because every

device that connects to the Internet must use an IP address, IP address information can help to

identify which computers or other devices were used to access the e-mail account.

16.     In my training and experience, perpetrators in cybercrime investigations can use

multiple e-mail accounts in the course of the scheme.   In order to help identify the perpetrators and

locate their whereabouts, the perpetrators may have used other associated accounts that shared the

same browser cookie as an email account.   For example, a perpetrator may have used an email

account to perpetuate the scheme under investigation but, in the same browser session, logged into

a separate email account with the same provider that would serve as a true or actual e-mail account

for the perpetrator.

17.     Moreover, I know from training and experience that criminals will list their true or

legitimate e-mail accounts as recovery e-mail accounts.   Google will send communications to the

---

[1] "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.

recovery e-mail account a subscriber inputs, for example, to verify the subscriber's identity or to help them unlock their account.   I know from my training and experience that when criminals communicate using their personal e-mail accounts, they are less likely to take means to conceal the identities and whereabouts of themselves and their co-conspirators. I also know from training and experience that older accounts created before the beginning of a particular fraud scheme are more likely to contain communications that contain evidence as to the true identity and whereabouts of the perpetrator/account owner.

18.     In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

19.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts

lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the IP addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION REGARDING APPLE ID AND iCLOUD[2]

20.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch,

all of which use the iOS operating system, and desktop and laptop computers, such as the MacBook

Air, based on the Mac OS operating system.

21.     Apple provides a variety of services that can be accessed from Apple devices or, in

some cases, other devices via web browsers or mobile and desktop applications ("apps").   As

described in further detail below, the services include email, instant messaging, and file storage:

        a.     Apple provides email service to its users through email addresses at the

domain names mac.com, me.com, and icloud.com.

        b.     iMessage and FaceTime allow users of Apple devices to communicate in

real-time.   iMessage enables users of Apple devices to exchange instant messages ("iMessages")

containing text, photos, videos, locations, and contacts, while FaceTime enables those users to

conduct video calls.

        c.     iCloud is a file hosting, storage, and sharing service provided by Apple.

iCloud can be utilized through numerous iCloud-connected services, and can also be used to store

iOS device backups and data associated with third-party apps.

        d.     iCloud-connected services allow users to create, store, access, share, and

synchronize data on Apple devices or via icloud.com on any Internet-connected device.   For

example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple

---

2     The information in this section is based on information published by Apple on its website, including, but not
limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at
http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available
at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "iCloud: iCloud
storage and backup overview," available at https://support.apple.com/kb/PH12519; and "iOS Security," available at
http://images.apple.com/privacy/docs/iOS_Security_Guide.pdf.



devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all of the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

       e.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

       f.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.

       g.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

       h.      App Store and iTunes Store are used to purchase and download digital content.  iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.



10

22.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

23.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

24.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

25.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

26.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

27.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by



Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

28.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

29.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.



30.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

31.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.



14

33.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

### MANNER OF EXECUTING THE WARRANTS

34.     Based on my training and experience, I know that information concerning the SUBJECT ACCOUNTS may be found on one or more computer servers owned and operated by Apple and Google.  Only those portions of the servers containing information associated with the SUBJECT ACCOUNTS will be searched.  The search will be conducted by one or more persons knowledgeable about the computer servers, including employees or agents of Apple and Google.

35.     Based on my training and experience, I also know that providers such as Apple and Google do not have the resources or the expertise to identify specific mail messages or other records relevant to a criminal investigation.  Instead, it is the practice of these providers to copy all email messages and other records from a specified account in response to a search warrant. Accordingly, the warrants require Apple and Google to disclose to the government copies of all the information described in Section I of Attachments B-1 and B-2.  Upon receipt of the information described in Section I of Attachments B-1 and B-2, government-authorized persons will review that information to locate the items described in Section II of Attachments B-1 and B-2.



## THE INVESTIGATION AND PROBABLE CAUSE

36.     Agents of the Federal Bureau of Investigation are investigating a ransomware variant known as ▇▇▇▇▇.

37.     Ransomware is a form of malicious software designed to block access to a computer system by encrypting some or all of the files on that system.  In order to receive the decryption key, the owner must pay a ransom to the individuals behind the ransomware.  Instructions for paying the ransom are typically left in the form of a ransom note left on the infected system.

38.     When a computer system is infected with ▇▇▇▇, it leaves one or more copies of the following ransom note, in pertinent part, instructing the computer's owner to contact ▇▇▇▇▇▇ in order to make payment and decrypt the owner's files:







39.     The FBI has received numerous complaints from victims (both individuals and businesses), including at least one victim in Connecticut, whose computers were compromised by ████. Victims of ████ have reported communicating with email address ████████ and receiving responses containing ransom payment instructions (including payment of bitcoins), decrypted file samples, and links to download decryption software. The FBI has continued to receive complaints from victims whose computers were infected as recently as October 2017.

40.     In April 2016, a victim company located in the New York City area ("VICTIM A"), whose identity is known to me, was infected by the ████ ransomware. VICTIM A contacted the email address provided in the ransom note, ████████, and ultimately paid the ransom. VICTIM A's business was shut down for approximately two days as a result of the infection.

41.     Following the attack, VICTIM A reviewed log files for its server in which the infection started. VICTIM A identified a Remote Desktop Protocol ("RDP") account on the server which had been accessed by the attacker on April 18, 2016. In reviewing the logs for that RDP account, VICTIM A observed approximately twelve suspicious IP addresses connecting to it

between April 17 and April 21.

42.     One IP address identified by VICTIM A as being used to connect to the RDP account was IP address ███████124.68.  This IP address was used to log in to the RDP account on April 19, 2016 at approximately 5:51:41 PM ET.  The Client Name recorded for this login was "MacBook-Air-███."  Based on my training and experience, I am aware that a MacBook is a laptop computer sold by Apple.

43.     According to the publicly available website centralops.net, the IP address ███████124.68 is assigned to ████████████████████Kiev, Ukraine.

44.     According to records provided by Apple, from April 16 to April 23, 2016, the IP address ███████124.68 was used by devices associated with two Apple accounts.  Apple identified no other subscribers using that IP address to connect to Apple services during that time period.  Subscriber information for the accounts included the following, in part:

> Account One
> First Name: ███████
> Last Name: ███████
> Email Address: ████████████@gmail.com
> Address: ███████Kiev, UKR
> Person_id: ███████
> Sign-up date: November 5, 2014
>
> Account Two
> First Name: ███████
> Last Name: ███████
> Email Address: ███████@list.ru
> Address: ███████████Tampa, FL 33609
> Person_id: ███████
> Sign-up date: March 4, 2012

45.     Account One connected to Apple services from IP address ███████124.68 approximately 65 times between April 16 and April 23, 2016.  Account Two connected to Apple services from that same IP address approximately 44 times during that same time period.  The

18



Apple records also indicate that a MacBook-Air device is associated with Account Two.

46.     According to the publicly available website translate.google.com, " ███████ "

translates from Ukrainian to English as " ██████ "

47.     As discussed above, according to VICTIM A's server logs, the Client Name

recorded for the login to the RDP account from IP address ████ 124.68 was "MacBook-Air-

████ " The letters " ████ " are the same as the first three letters of the name " ████ " or " ████ "

48.     Based on my training and experience, I know that the address ██████████████

Tampa, FL is found on several Russian-language websites as part of a tutorial for creating an

iTunes account in order to access the United States version of the Apple App Store.

49.     Based on this information, plus the use of the same name and the use of a common

IP address, I believe that Account One and Account Two are controlled by the same person or

persons, who I believe are the same person or persons that logged into and infected VICTIM A's

servers with the ████ ransomware.

50.     Based on my training and experience, I am aware that Apple will send

communications and notifications via email to account subscribers to the registered email address.

Thus, the individuals who control, use, or access the registered email address are likely the same

individual(s) that control, use, or access the Apple account.  In this case, Account One was

registered using the email address ███████████ @gmail.com. Therefore, I believe there is

probable cause that this email address will contain communications and notifications sent by

Apple, which are evidence of the TARGET OFFENSE.

51.     In addition, as discussed above, based on my training and experience, I am aware

that Apple collects information about the identity and location of individuals who use an Apple

account or device.  Apple iCloud accounts often contain location information and backups of file,



photographs, emails, and text messages stored on an Apple device, which can also reveal the

identity and location of individuals who use an Apple account or device. Similarly, emails stored

in Google gmail accounts contain information and files which can also reveal the identity and

location of individuals who use the account. Therefore, I believe there is probable cause that the

SUBJECT ACCOUNTS will contain evidence about the individual or individuals who committed

the TARGET OFFENSE and the location of those individual(s) as the offense was being

committed.

52.     On July 26, 2017, I directed Apple to preserve all records associated with Account

One and Account Two, and directed Google to preserve all records associated with the account

████████████@gmail.com.   Therefore, I believe there is probable cause that the records and

information associated with the SUBJECT ACCOUNTS will still be present on the servers of

Google and Apple.

## CONCLUSION

53.     Based on the aforementioned factual information, I believe there is probable cause

to believe, and I do believe, that evidence of violations of Title 18, United States Code, Section

1030 (Fraud and related activity in connection with computers) is located within the SUBJECT

ACCOUNTS, which constitute and contain items that constitute contraband, fruits,

instrumentalities and evidence of crime, or material otherwise criminally possessed, or property

that is or has been used as the means of committing the offense.

54.     In consideration of the foregoing, I respectfully request that this Court issue

warrants authorizing the search of the SUBJECT ACCOUNTS, for the items more specifically

identified in Attachments B-1 and B-2. Because the warrants will be served on Google and Apple,



who will then compile the requested records at a time convenient to it, good cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING AND NON-DISCLOSURE ORDER

55.      Google and Apple are each a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." Id.

56.      In this case a non-disclosure order and sealing of the warrants, applications, and affidavits would be appropriate because the warrants relate to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and disclosure may alert the targets to the ongoing investigation.  There is reason to believe that notification of the existence of the warrants will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. See 18 U.S.C. § 2705(b).  Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrants, the subjects under investigation could destroy that evidence, including information saved to their personal computers. Moreover, the obligation of nondisclosure should terminate in one year rather than a shorter period of time because the entire investigation is in its early stages, cyber-related investigations can be prolonged because cyberspace offers suspects numerous opportunities to hide their identity, and



the United States has reason to believe that one or more of the targets and additional evidence is located overseas.

57.     Accordingly, I respectfully request that the Court issue Orders directing Google and Apple not to disclose the existence or content of the warrants for a period of one year, except that the providers may disclose the warrants to their attorneys for the purpose of receiving legal advice and as necessary to their employees for the sole purpose of compliance with and providing responsive information to the warrants. I also respectfully request that the search warrants, applications, affidavits, and non-disclosure orders be ordered sealed by the Court, until further order of the Court, except that copies of the search warrants may be provided to other law enforcements agents who are participating in this investigation and the providers so that the search warrants can be executed.

_____
Special Agent Michael Morrison
Federal Bureau of Investigation

Subscribed and sworn to before me this 13th day of November, 2017

/s/ Judge Joan G. Margolis
_____
HON.  JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A-1
PROPERTY TO BE SEARCHED

This warrant applies to the accounts and information associated with Google accounts with the following email address:

███████████@gmail.com

as well as any Google accounts linked to that account by cookies, recovery email address, or telephone number (referred to herein and in Attachment B-1 as "SUBJECT ACCOUNTS") that are stored at premises owned, maintained, controlled, or operated by Google, Inc., a company located at 1600 Amphitheatre Parkway, Mountain View, California, 94043 (referred to herein and in Attachment B-1 as the "Provider.").

ATTACHMENT B-1
LIST OF ITEMS TO BE SEIZED

**I.     Information to be disclosed by Google, Inc. (the "Provider")**

To the extent that the information associated listed on Attachment A-1 is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for the period from April 1, 2016 to the date this warrant is executed:

a.     The contents of all e-mails associated with the accounts, including stored or preserved copies of e-mails sent to and from the accounts, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, the size and length of each e-mail, and any and all attachments to each e-mail;

b.     All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information regarding the identification of the device used to access the accounts, including cellular site and sector information, GPS data, and cellular network identifying information (such as the IMSI, MSISDN, IMEI, MEID, or ESN);

e.      Any and all content of services utilized by the accounts, including but not limited to Hangouts, Calendar, Web History, YouTube, Android, Chrome Sync, Google Drive, and Location History;

f.      All records or other information stored at any time by an individual using the accounts, including "chat" or other online communications, personal web pages, address books, contact and buddy lists, calendar data, pictures, and files; and

g.      All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken.


The Provider is also requested to complete a certificate of authenticity for domestic business records that will satisfy Rule 902(11) of the Federal Rules of Evidence.  A form of certificate of authenticity is attached.

## II.      Information to be seized by the government

All information described above in Section 1 that constitutes fruits, contraband, evidence, or instrumentalities of violations of Title, 18 United States Code, Section 1030 (Fraud and related activity in connection with computers) (the "TARGET OFFENSE") through ransomware attacks, from April 1, 2016 to the present including, but not limited to, the following:

a.      All information and records related to ransomware;

b.      All information and records related to bitcoins, payments of money, wire transfers, money transfers, electronic funds and ACH transfers, and any instructions or directions related to such transfers;

c.      All information and records related to financial accounts (including investment accounts, bank accounts, retirement accounts, or any accounts that hold money);

d.      All electronic mail, attachments, and related computer files that relate to the TARGET OFFENSE;

e.      Evidence indicating how and when the SUBJECT ACCOUNTS were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

f.      Evidence indicating the user's state of mind as it relates to the TARGET OFFENSE for any user of the SUBJECT ACCOUNTS;

g.      Evidence indicating the identity of the person(s) who used, accessed, owned, controlled, or created the SUBJECT ACCOUNTS, including records that help reveal the whereabouts of such person(s); and

h.      Passwords and encryption keys, and other access information that may be necessary to access the SUBJECT ACCOUNTS.

B-1-3

<u>ATTACHMENT A-2</u>
PROPERTY TO BE SEARCHED

This warrant applies to accounts and information associated with the following identifiers:



**Apple Person ID**

**Apple Person ID**

**Email address** @gmail.com

**Email address** @list.ru

(referred to herein and in Attachment B-2 referred to as the "SUBJECT ACCOUNTS") that are stored at premises owned, maintained, controlled, or operated by Apple Inc. (referred to herein and in Attachment B-2 as "Apple" or "Provider"), a company headquartered at a company headquartered at 1 Infinite Loop, Cuptertino, CA 95014.

ATTACHMENT B-2
LIST OF ITEMS TO BE SEIZED

**I.      Information to be disclosed by the Apple, Inc. (the "Provider")**

To the extent that the information associated listed on Attachment A-2 is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for the period from April 1, 2016 to the date this warrant is executed:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

      c.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

      d.     The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

      e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

      f.     All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of

B-2-2

Apple and third-party apps), messaging and query logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find my iPhone logs, logs associated with iOS device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers);

       g.      All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services;

       h.      All records pertaining to the types of service used;

       i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

       j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

The Provider is also requested to complete a certificate of authenticity for domestic business records that will satisfy Rule 902(11) of the Federal Rules of Evidence.  A form of certificate of authenticity is attached.

## II.      Information to be seized by the government

All information described above in Section 1 that constitutes fruits, contraband, evidence, or instrumentalities of violations of Title, 18 United States Code, Section 1030 (Fraud and related activity in connection with computers) (the "TARGET OFFENSE") through ransomware attacks, from April 1, 2016 to the present including, but not limited to, the following:

a.      All information and records related to ransomware;

b.      All information and records related to bitcoins, payments of money, wire transfers, money transfers, electronic funds and ACH transfers, and any instructions or directions related to such transfers;

c.      All information and records related to financial accounts (including investment accounts, bank accounts, retirement accounts, or any accounts that hold money);

d.      All electronic mail, attachments, and related computer files that relate to the TARGET OFFENSE;

e.      Evidence indicating how and when the SUBJECT ACCOUNTS were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

f.      Evidence indicating the user's state of mind as it relates to the TARGET OFFENSE for any user of the SUBJECT ACCOUNTS;

g.      Evidence indicating the identity of the person(s) who used, accessed, owned, controlled, or created the SUBJECT ACCOUNTS, including records that help reveal the whereabouts of such person(s); and

h.      Passwords and encryption keys, and other access information that may be necessary to access the SUBJECT ACCOUNTS.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS<br>PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)</u>

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct.  I am employed by _____,

and my official title is _____.  I am a custodian of records for

_____.  I state that each of the records attached hereto is the original record or a

true duplicate of the original record in the custody of _____ and that I am the

custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state

that:

      a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

      b.     such records were kept in the ordinary course of a regularly conducted business

activity of _____; and

      c.     such records were made by _____ as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.


_____          _____
Date                                              Signature